# UNITED STATES DISTRICT COURT FOR
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| ADRIAN GIL ROJAS,<br><br>   *Petitioner,*<br><br>   v.<br><br>Facility Administrator Frank Venegas, El Valle Detention Center; Miguel Vergara, Acting Field Office Director, San Antonio Field Office, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; PAMELA JO BONDI, United States Attorney General, *in their official capacities*,<br><br>   *Respondents.* | Civil Action No.: 1:25-cv-56<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## PETITION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241

### INTRODUCTION

1. Petitioner Adrian Gil Rojas is a Venezuelan national who holds Temporary Protected Status (TPS) under 8 U.S.C. 1254a and who is protected from removal by both his TPS status and his pending motion to reopen. 8 U.S.C. 1229a(b)(5)(C). Based on the plain text of the TPS statute, his detention in ICE custody is unlawful. That statute provides that "[a]n alien provided temporary protected status under this section *shall not be detained* by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. 1254a(d)(4) (emphasis added). Statutory protection from detention and removal remains available even if the TPS holder has a final removal order or lacks other immigration status,

1

because the government "shall not remove the alien from the United States during the period in which such [TPS] status is in effect." 8 U.S.C. 1254a(a)(1)(A). *See also* 8 U.S.C. 1254a(a)(5) (TPS statute provides no authority to "deny temporary protected status to an alien based on the alien's immigration status"); 8 U.S.C. 1254a(g) (TPS statute constitutes the exclusive authority for affording nationality-based protection to "otherwise deportable" non-citizens).

2. Despite this unambiguous statutory command, Petitioner has now been detained by U.S. Immigration and Customs Enforcement (ICE) for 51 days and, on information and belief, faces imminent removal from the U.S.

3. Petitioner challenges his detention as a violation of the Immigration and Nationality Act (INA) and the Due Process Clause of the Fifth Amendment.

4. Petitioner respectfully requests that this Court grant him a Writ of Habeas Corpus and order Respondents to enjoin his unlawful removal and release him from custody. Petitioner seeks habeas relief under 28 U.S.C. 2241, which is the proper vehicle for challenging civil immigration detention. *See Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas") (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

**CUSTODY**

5. Petitioner is in the physical custody of Respondents. Petitioner is imprisoned at El Valle Detention Center, an immigration detention facility, in Raymondville, Texas. Petitioner is under the direct control of Respondents and their agents.

**JURISDICTION**

6. This Court has jurisdiction to entertain this habeas petition under 28 U.S.C. 1331; 28 U.S.C.

2241; the Due Process Clause of the Fifth Amendment, U.S. Const. amend. V; and the Suspension Clause, U.S. Const. art. I, § 2.

**VENUE**

7. Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because at least one Respondent is in this District, Petitioner is detained in this District, Petitioners' immediate physical custodian is located in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("the proper respondent to a habeas petition is 'the person who has custody over the petitioner'") (citing 28 U.S.C. 2242) (cleaned up).

**PARTIES**

8. Petitioner Adrian Gil Rojas is currently detained by Respondents at the El Valle Detention Center, an immigration detention facility. He has been in ICE custody since on or about January 21, 2025, when he was detained at home by officers who were looking for someone else. Officers removed his infant son from his arms and handcuffed him, ultimately leaving the child alone with ICE officers until his mother arrived.

9. Respondent Frank Venegasis is the Facility Administrator of the El Valle facility, where Petitioner is currently detained. Mr. Vanegas is a legal custodian of Petitioner and is named in her official capacity.

10. Respondent Miguel Vergara is the Acting Field Office Director for San Antonio, which is responsible for the Harlingen Sub-Field Office of ICE with administrative jurisdiction over Petitioner's immigration case. He is a legal custodian of Petitioner and is named in her official capacity.

11. Respondent Kristi Noem is the Secretary of the United States Department of Homeland

Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

12. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

**STATEMENT OF FACTS**

### I. PETITIONER WAS DETAINED DESPITE HAVING TEMPORARY PROTECTED STATUS FROM VENEZUELA

13. Mr. Gil Rojas came to the United States on or about April 30, 2023. He applied for Temporary Protected Status on Nov. 27, 2023. His application was granted on May 16, 2024. Although the history and current procedural status of TPS for Venezuela is somewhat complex, *see infra* Section II, all that matters for purposes of this habeas petition is that TPS for Venezuela remains in effect until April 2, 2025, and that Petitioner continues to hold TPS status.

14. Mr. Gil Rojas also has an in absentia removal order from Sep. 10, 2024, when he missed court in Buffalo, New York. On March 11, 2025, he filed a motion to rescind his in absentia order. That motion alleges exceptional circumstances for Mr. Gil Rojas's failure to appear in court and its submission triggered an automatic stay of his removal from the U.S. under 8 U.S.C. 1229a(b)(5)(C).

15. Mr. Gil Rojas's pro bono counsel has advised ICE ERO via email that Mr. Gil Rojas cannot be lawfully detained or removed due to both his valid TPS status as well as his pending motion to reopen.

16. ICE officers took Mr. Gil Rojas into custody at his home on January 21, 2025. Officers entered the home in search of another individual but knocked on Mr. Gil Rojas's bedroom door. He opened it holding his two-year-old son. The officers took his son from him, handcuffed and fingerprinted him, all without permission or consent. The officers then

informed him he had an order of removal. Mr. Gil Rojas told them that he had TPS and showed them immigration paperwork. The officers ignored him but retained the paperwork.

17. Mr. Gil Rojas retained pro bono counsel to represent him only several weeks later while still in ICE detention at Orange County Jail in Goshen, New York. Counsel had difficulty in preparing his case because Mr. Gil Rojas's unit at the jail was placed under a two-week quarantine, evidently due to a TB outbreak, and he could not meet with counsel, although he could have legal calls. Communication was further hampered when Mr. Gil Rojas was suddenly transferred—despite the quarantine—to a succession of other facilities beginning on or about March 7, 2025. Counsel ultimately filed a motion to reopen for him on March 11, 2025. By that point, Mr. Gil Rojas was detained at El Valle Detention Center in Texas.

18. Counsel advised ICE ERO via email to the Harlingen and New York City field offices on March 10, 2025 that Mr. Gil Rojas has valid TPS status and cannot lawfully be detained or removed.

19. On March 12, 2025, counsel wrote again to the Harlingen and New York City field offices to advise that Mr. Gil Rojas has valid TPS status and to add that he now also had a pending motion to reopen which carried an automatic stay of removal. ICE officers in both field offices responded confirming receipt.

20. On March 14, 2025, Mr. Gil Rojas called his partner to inform her that he and numerous other people had been placed on what they were told was a removal flight to Venezuela but that due to mechanical problems the plane could not take off and they were returned to El Valle. He further told her that he and the other passengers were told they would be deported tomorrow, March 15, 2025, to Venezuela.

   II.     **TEMPORARY PROTECTED STATUS FOR VENEZUELA REMAINS IN EFFECT**

21. Venezuelans living in the United States first received temporary protection from removal on January 19, 2021, when President Trump—on the last day of his first Administration—directed the Secretaries of State and Homeland Security to "take appropriate measures to defer for 18 months the removal of any national of Venezuela . . . who is present in the United States as of January 20, 2021," with limited exceptions, and "to take appropriate measures to authorize employment for aliens whose removal has been deferred, as provided by this memorandum, for the duration of such deferral." Memorandum re Deferred Enforced Departure for Certain Venezuelans, 86 Fed. Reg. 6845 (Jan. 19, 2021).

22. DHS then designated TPS for Venezuela on March 9, 2021, based on the Secretary's determination that "extraordinary and temporary conditions in the foreign state prevent [Venezuelans] from returning in safety" and "permitting [Venezuelans] to remain temporarily in the United States" is not "contrary to the national interests of the United States." 86 Fed. Reg. 13574 at 13575. The Secretary found that "Venezuela is currently facing a severe humanitarian emergency" and "has been in the midst of a severe political and economic crisis for several years . . . marked by a wide range of factors including: Economic contraction; inflation and hyperinflation; deepening poverty; high levels of unemployment; reduced access to and shortages of food and medicine; a severely weakened medical system; the reappearance or increased incidence of certain communicable diseases; a collapse in basic services; water, electricity, and fuel shortages; political polarization; institutional and political tensions; human rights abuses and repression; crime and violence; corruption; increased human mobility and displacement (including internal migration, emigration, and return); and the impact of the COVID-19 pandemic, among other factors." *Id.* at 13576.

23. DHS extended and broadened TPS protection for Venezuela twice after that initial designation. DHS extended Venezuela's TPS designation for 18 months on September 8, 2022, through March 10, 2024. 87 Fed. Reg. 55024. DHS again extended the 2021 designation of Venezuela for 18 months on October 3, 2023. At that time DHS also re-designated Venezuela for TPS for 18 months. 88 Fed. Reg. 68130 ("2023 Venezuela Designation"), allowing individuals who had come to the United States after March 2021 to become eligible. The extension of the 2021 designation ran from March 11, 2024 to September 10, 2025. The new 2023 re-designation ran from October 3, 2023 through April 2, 2025. Finally, on January 17, 2025, the DHS Secretary extended the 2023 Venezuela Designation by 18 months, through October 2, 2026. 90 Fed. Reg. 5961 ("January 2025 Extension").

24. In support of that extension, the DHS Secretary found that "Venezuela is experiencing a complex, serious and multidimensional humanitarian crisis. The crisis has reportedly disrupted every aspect of life in Venezuela. Basic services like electricity, internet access, and water are patchy; malnutrition is on the rise; the healthcare system has collapsed; and children receive poor or no education. Inflation rates are also among the highest in the world. Venezuela's complex crisis has pushed Venezuelans into poverty, hunger, poor health, crime, desperation and migration. Moreover, Nicolas Maduro's declaration of victory in the July 28, 2024 presidential election—which has been contested as fraudulent by the opposition—has been followed by yet another sweeping crackdown on dissent." *Id.* at 5963 (internal quotation marks and citations omitted).

25. After the election the government reversed course on TPS for Venezuela. On January 28, 2025, the new DHS Secretary purported to "vacate" the January 2025 Extension of TPS for

Venezuela.[1] That decision was the first vacatur of a TPS extension in the 35-year history of the TPS statute. DHS published it via notice in the Federal Register on February 3, 2025. 90 Fed. Reg. 8805.

26. On February 1, 2025, the new Secretary "decided to terminate" the 2023 Venezuela Designation, ordering an end to the legal status of approximately 350,000 Venezuelans, effective in April.[2]

27. On February 5, 2025, DHS published a notice in the Federal Register purporting to terminate the 2023 Venezuela Designation. 90 Fed. Reg. 9040.

28. On February 19, the National TPS Alliance and seven individual Venezuelan TPS holders sued the federal government, alleging that the vacatur and subsequent termination of TPS for Venezuela were contrary to the TPS statute in violation of the Administrative Procedure Act and unlawful under the Fifth Amendment. *See National TPS Alliance v. Noem*, No. 3:25 CV 01766 (N.D. Cal.). Plaintiffs have moved to stay the recent vacatur and termination. A hearing on that motion it set for March 24, 2025.

29. The first Trump administration also attempted to strip several hundred thousand people of their TPS status. That attempt ultimately proved unsuccessful, as everyone who held TPS in 2017 remained eligible for it by the end of the first Trump administration. *See generally Ramos v. Nielsen*, 709 F. Supp. 3d 871 (N.D. Cal. 20

---

[1] USCIS, *Temporary Protected Status Designated Country: Venezuela*, available at https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-venezuela.

[2] USCIS, *Temporary Protected Status Designated Country: Venezuela*, available at https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-venezuela.

30. 23) (explaining procedural history).

## LEGAL FRAMEWORK

31. The Court need analyze only one statutory provision to resolve this habeas petition. The TPS statute unambiguously provides that "[a]n alien provided temporary protected status under this section *shall not be detained* by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. 1254a(d)(4) (emphasis added). It is hard to imagine a clearer statutory mandate proscribing detention.[3]

32. The Court need not delve further in an attempt to understand other aspects of Petitioner's immigration status, because TPS protection remains valid even if the TPS holder has a final removal order or lacks other immigration status. 8 U.S.C. 1254a(a)(1)(A) (the government "shall not remove the alien from the United States during the period in which such [TPS] status is in effect."); 8 U.S.C. 1254a(a)(5) (TPS statute provides no authority to "deny temporary protected status to an alien based on the alien's immigration status"). *See also* 8 U.S.C. 1254a(g) (TPS statute constitutes the exclusive authority for affording nationality-based protection to "otherwise deportable" non-citizens). For that reason alone, this Court should grant the writ and order Petitioner's immediate release. *See* 28 U.S.C. 2241(c)(3) (authorizing writ for people detained in violation of federal law).

33. Should the Court nonetheless choose to address constitutional questions, it should also find that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth

---

[3] "Attorney General" in Section 1254a now refer to the Secretary of the Department of Homeland Security. *See* 8 U.S.C. 1103; 6 U.S.C. 557.

Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

34. Petitioner's detention violates the Fifth Amendment's protection for liberty, for at least three related reasons. First, immigration detention must always "bear[] a reasonable relation to the purpose for which the individual was committed." *Demore v. Kim*, 538 U.S. 510, 527 (2003) (citing *Zadvydas*, 533 U.S. at 690). Where, as here, the government has no authority to deport Petitioner, detention is not reasonably related to its purpose.

35. Second, because Petitioner is not "deportable" insofar as the TPS statute bars his deportation, the Due Process Clause requires that any deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"); *Demore*, 538 U.S. at 528 (applying less rigorous standard for "deportable aliens"). Petitioner's on-going imprisonment obviously cannot satisfy that rigorous standard.

36. Third, at a bare minimum, "the Due Process Clause includes protection against *unlawful* or arbitrary personal restraint or detention." *Zadvydas v. Davis*, 533 U.S. 678, 718 (2001) (Kennedy, J., dissenting) (emphasis added). Where federal law explicitly prohibits an individual's detention, their detention also violates the Due Process Clause.

37. It is irrelevant for purposes of this case that Petitioner's TPS status may expire in several weeks, if the government successfully defends in court its unprecedented attempt to vacate the January 2025 TPS Extension for Venezuela. The TPS statute's unambiguous command applies so long as the TPS holder's status remains in effect. It contains no exception for people whose TPS status may soon expire. And, as noted above, because litigation has now

10

commenced to challenge the government's attempt to end TPS for Venezuela, it would not be appropriate for this Court (or any other) to speculate on the likely outcome of that litigation. Rather, it should decide this petition on the state of affairs as it currently exists, under which Petitioner remains a TPS holder.

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT – 8 U.S.C. § 1254a

38. Petitioner realleges and incorporates by reference each and every allegation contained above.

39. Section 1254a of Title 8 of the U.S. Code governs the treatment of TPS holders, including their detention and removal under federal immigration law.

40. Section 1254a(d)(4) states "[a]n alien provided temporary protected status under this section *shall not be detained* by the Attorney General on the basis of the alien's immigration status in the United States." (emphasis added). There is no exception to this rule provided in the statute.

41. Thus, Petitioner's detention violates Section 1254a, and he is entitled to immediate release from custody.

### COUNT TWO
### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT – 8 U.S.C. § 1254a

42. Petitioner realleges and incorporates by reference each and every allegation contained above.

43. Section 1254a(a)(1)(A) states the government "shall not remove the alien from the United States during the period in which such [TPS] status is in effect."

44. Section 1229a(b)(5)(C) further provides that the filing of a motion to rescind an in absentia

11

removal order based on failure to appear "shall stay the removal of the alien pending disposition of the motion by the immigration judge."

45. Thus, Petitioners' imminent removal violates Section 1254a and Section 1229a, and he is entitled to enjoinder of his removal from the U.S.

**COUNT THREE**
**VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**

46. Petitioners reallege and incorporate by reference each and every allegation contained above.

47. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. See generally *Reno v. Flores*, 507 U.S. 292 (1993); Zadvydas v. Davis, 533 U.S. 678 (2001); Demore v. Kim, 538 U.S. 510 (2003).

48. Petitioner's detention violates the Due Process Clause because it is not rationally related to any immigration purpose; because it is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning Petitioner; and because it lacks any statutory authorization.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. 2243;

3. Declare that Petitioner's detention violates the Immigration and Nationality Act, and specifically 8 U.S.C. 1254a;

4. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

5. Grant a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody;

6. Enjoin Petitioners from further removing or detaining Petitioner so long as TPS for Venezuela remains in effect and he continues to hold TPS status and/or his motion to rescind remains pending before the immigration judge;

7. Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

8. Grant such further relief as this Court deems just and proper.

Dated: March 14, 2025                    Respectfully submitted,


                                         /s/ Javier N. Maldonado
                                         Javier N. Maldonado
                                         TX Bar No. 00794216
                                         Fed. Bar No. 20113

                                         Law Office of Javier N. Maldonado, PC
                                         8620 N. New Braunfels, Ste. 605
                                         San Antonio, Texas 78217
                                         Telephone: (210) 277-1603
                                         Facsimile: (210) 587-4001
                                         Email: jmaldonado.law@gmail.com

                                         Paige Austin*
                                         Make The Road New York
                                         301 Grove St.
                                         Brooklyn, New York 11237
                                         Tel: (718) 565-8500 ext. 4139
                                         Facsimile: 866-420-9169
                                         Email: paige.austin@maketheroadny.org
                                         NY Bar: 5246954

                                         * Pro hac vice motion forthcoming

                                         **ATTORNEYS FOR PLAINTIFF**

**Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I, Javier N. Maldonado, co-counsel Paige Austin, and others working under my supervision have discussed with Petitioner the events described in this Petition. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus, including the statements regarding Petitioner's TPS status, are true and correct to the best of my knowledge.

/s/ Javier N. Maldonado                                  Date: March 14, 2025