**UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| ADRIAN GIL ROJAS,<br><br>*Petitioner,*<br><br>v.<br><br>FRANK VANEGAS, Facility Administrator for El Valle Detention Center; MIGUEL VERGARA, Acting Field Office Director, San Antonio Field Office, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; PAMELA JO BONDI, United States Attorney General, *in their official capacities*,<br><br>*Respondents.* | Civil Action No.:  1:25-cv-56<br><br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE
ALTERNATIVE, FOR A PRELIMINARY INJUNCTION**

Petitioner Adrian Gil Rojas (Petitioner or Petitioner) files this motion requesting the Court's request for a temporary restraining order (TRO) or, in the alternative, for a preliminary injunction preventing his removal pending a final decision in his petition for a writ of habeas corpus.

Petitioner is a Venezuelan national presently detained by Respondents in El Valle Detention Center in Raymondville, Texas. Respondent Noem and the U.S. Citizenship and Immigration

1

Services (USCIS) approved Petitioner's application for Temporary Protected Status (TPS) on May 16, 2024. On September 10, 2024, an immigration judge in Buffalo, New York ordered Petitioner removed when he failed to appear for his hearing. On January 21,2025, Respondents arrested Petitioner when Respondents entered his home searching for another individual.

Respondents intend to execute Petitioner's removal order notwithstanding Congress' express command that the removal orders of TPS holders cannot be executed, *see* 8 U.S.C. § 1254a(a)(1)(A). Because Respondents have no discretion to execute Petitioner's removal order as per § 1254a(a)(1)(A), Petitioner urges this Court to issue a temporary restraining order barring the execution of the removal order.

There is a second reason why Respondents cannot execute Petitioner's removal order. On March 11, 2025, he filed with the Buffalo Immigration Court a motion to rescind his in absentia order. That motion alleges exceptional circumstances for Petitioner's failure to appear in court and its submission triggered an automatic stay of his removal from the United States under 8 U.S.C. 1229a(b)(5)(C).

Respondents' expressed intent to remove Petitioner is prohibited by federal law. Petitioner requests this Court's assistance to ensure that Respondents comply with federal law and prevent Petitioner's removal.

## I.      FACTUAL BACKGROUND

Petitioner came to the United States on or about April 30, 2023. He applied for Temporary Protected Status on November 27, 2023. Exh. 1; Pet. Writ of Habeas Pet. at ¶ 13. His application was granted on May 16, 2024. Exh. 3; Pet. Writ of Habeas Pet. at ¶ 13. Although the history and current procedural status of TPS for Venezuela is somewhat complex, all that matters for purposes of this TRO and the habeas petition is that TPS for Venezuela remains in effect until

April 7, 2025, 90 Fed. Reg. 9040-9041, and that Petitioner continues to hold TPS status.

Petitioner has an in absentia removal order from September 10, 2024, when he missed court in Buffalo, New York. Exh. 3; Pet. Writ of Habeas Pet. at ¶ 14. On March 11, 2025, he filed a motion to rescind his in absentia order. Exh. 4 (Motion to Reopen cover page and electronic notice that motion was accepted). That motion alleges exceptional circumstances for Petitioner's failure to appear in court and its submission triggered an automatic stay of his removal from the U.S. under 8 U.S.C. 1229a(b)(5)(C). Petitioner's pro bono counsel has advised ICE ERO via email that Petitioner cannot be lawfully detained or removed due to both his valid TPS status as well as his pending motion to reopen.

ICE officers took Petitioner into custody at his home on January 21, 2025. Pet. Writ of Habeas Pet. at ¶ 16. Officers entered the home in search of another individual but knocked on Petitioner's bedroom door. He opened it holding his two-year-old son. The officers took his son from him, handcuffed and fingerprinted him, all without permission or consent. The officers then informed him he had an order of removal. Petitioner told them that he had TPS and showed them immigration paperwork. The officers ignored him but retained the paperwork.

Petitioner retained pro bono counsel to represent him only several weeks later while still in ICE detention at Orange County Jail in Goshen, New York. Counsel had difficulty in preparing his case because Petitioner's unit at the jail was placed under a two-week quarantine, evidently due to a TB outbreak, and he could not meet with counsel, although he could have legal calls. Pet. Writ of Habeas Pet. at ¶ 17. Communication was further hampered when Petitioner was suddenly transferred—despite the quarantine—to a succession of other facilities beginning on or about March 7, 2025. Counsel ultimately filed a motion to reopen for him on March 11, 2025. By that point, Petitioner was detained at El Valle Detention Center in Texas. *Id.*

Counsel advised ICE ERO via email to the Harlingen and New York City field offices on March 10, 2025 that Petitioner has valid TPS status and cannot lawfully be detained or removed. On March 12, 2025, counsel wrote again to the Harlingen and New York City field offices to advise that Petitioner has valid TPS status and to add that he now also had a pending motion to reopen which carried an automatic stay of removal. ICE officers in both field offices responded confirming receipt. Pet. Writ of Habeas Pet. at ¶ 19.

On March 14, 2025, Petitioner called his partner to inform her that he and numerous other people had been placed on what they were told was a removal flight to Venezuela but that due to mechanical problems the plane could not take off and they were returned to El Valle. *Id.* at ¶ 20. He further told her that he and the other passengers were told they would be deported tomorrow, March 15, 2025, to Venezuela. *Id.*

## II.    ARGUMENT

Respondents intend to remove Petitioner in violation of federal law. Section 1154a(a)(1) expressly prohibits the removal of persons who hold TPS status. In the case of a person who has been granted TPS, the Secretary of Homeland Security "shall not remove the alien from the United States during the period in which such status is in effect…" 8 U.S.C. § 1154a(a)(1). A second federal law also prohibits Respondents from executing Petitioner's removal order. Petitioner filed a motion to reopen his in absentia removal order. "The filing of the motion to reopen [an in absentia removal order due to exceptional circumstances] shall stay the removal of the alien pending disposition of the motion by the immigration judge." 8 U.S.C. § 1229a(b)(5)(C). Congress command to Respondents could not be any clearer.

Respondents have expressed their intent to remove Petitioner in violation of federal law. If removed, Petitioner will suffer irreparable harm is his removal is not enjoined. Respondents will

suffer no harm since an order from this Court will simply instruct them to comply with federal law.

Lastly, granting a TRO or preliminary injunction is in the public interest because it upholds the

important principle that federal officers are bound to comply with the regulations that bind them.

Accordingly, this Court should enter an order enjoining Respondents from executing Petitioner's

removal order.

### A.  The Legal Standard for a Preliminary Injunction

A plaintiff is entitled to a preliminary injunction to preserve the status quo and prevent

irreparable harm until the parties' rights can be determined at trial on the merits. *City of Dallas v.*

*Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 20217). The "status quo" sought to be restored is

"the last peaceable uncontested status existing between the parties before the disputed developed."

Charles Alan Wright & Arthur R. Miller, 11A FEDERAL PRACTICE & PROCEDURE § 2948 (3d ed.

2013). Thus, the status quo in this case means preventing Respondents from executing Petitioner's

removal order..

To obtain a preliminary injunction, a plaintiff must show (1) a substantial likelihood of

prevailing on the merits; (2) a substantial likelihood of irreparable injury if the injunction is not

granted; (3) the threatened injury outweighs any harm that will result to the nonmovant if the

injunction is not granted; and (4) the injunction will not disserve the public interest. *Winter v.*

*Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008). The first two factors,

substantial likelihood of prevailing on the merits and of irreparable harm, are the most critical.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). In this circuit, the first factor, likelihood of success on

the merits, is the most important. *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005).

Further, "where there is a serious legal question involved and the balance of the equities heavily

favors [an injunction]…the movant only needs to present a substantial case on the merits." *Lake*

*Eugenie Land & Dev., Inc. v. BP Exploration & Prod. (In re Deepwater Horizon)*, 732 F.3d 326, 345 (5th Cir. 2013) (quoting *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011)).

### B. Petitioner is entitled to a TRO and/or a Preliminary Injunction Because Respondents' threatened action violates federal law

The main issue before this Court is a legal one: whether Respondents are authorized to remove Petitioner. It is clear that if this Court finds that Petitioner holds TPS status, then Respondents have no authority to execute his removal order. At the same time, if the Court finds that Petitioner filed a motion to reopen his in absentia removal order, federal law bars Respondents from removing Petitioner.

Based on the declaration in support of the motion and other evidence that will be developed at a hearing on this motion, Petitioner is likely to succeed in showing that Respondents' threatened actions violate federal law. The record will show that that Respondents cannot lawfully remove Petitioner and that an order from this Court is needed to require Respondents' compliance with federal law.

### 1. Respondents' Threatened Removal Violates Federal Law

Petitioner is a Venezuelan national who holds TPS. Although he has a final order of removal, 8 U.S.C. § 1254a(a)(1) protects Petitioner from removal and prevents the Department of Homeland Security from executing the removal order.

At the same time, Petitioner has filed a motion to reopen his in absentia removal order. "The filing of the motion to reopen [an in absentia removal order due to exceptional circumstances] shall stay the removal of the alien pending disposition of the motion by the immigration judge." 8 U.S.C. § 1229a(b)(5)(C).

Under these circumstances, it is plain that Respondents cannot remove Petitioner notwithstanding the existence of a removal order.

### 2. Petitioner will suffer irreparable harm is Respondents are allowed to execute his removal order

Congress has authorized Petitioner to remain in the United States until April 7, 2025 under the TPS program. Although Respondent Noem announced that TPS for Venezuelans would terminate on April 7, 2025, that announcement is the subject of litigation. On February 19, the National TPS Alliance and seven individual Venezuelan TPS holders sued the federal government, alleging that the vacatur and subsequent termination of TPS for Venezuela were contrary to the TPS statute in violation of the Administrative Procedure Act and unlawful under the Fifth Amendment. *National TPS Alliance v. Noem*, No. 3:25 CV 01766 (N.D. Cal.). On February 20, CASA, Inc. and Make the Road New York also sued the Government challenging the termination of TPS for Venezuelans. *See CASA et al. v. Noem*, 8:25-cv-00525 (D. Md.). Plaintiffs there similarly moved to stay the recent vacatur and termination of TPS for Venezuelans prior to its effective date. If Respondent is removed and that litigation is successful in restoring TPS for Venezuelans, Petitioner will lose the opportunity to remain living and working in this country with his family.

For similar reasons, Petitioner will suffer irreparable harm if removed before the immigration renders a decision in his motion to reopen. The granting of the motion vacates the removal order and permits Petitioner to seek any other relief in immigration court, including his request for asylum. If removed and the motion is granted after Petitioner's removal, the immigration court may be deprived of jurisdiction to proceed with the case or, more likely, Respondents will refuse to facilitate Petitioner's return to the United States to apply for asylum and any other relief that he may be eligible.

"In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2000). No amount of money physically restores Petitioner's status in the United States. If denied preliminary relief, Petitioner will suffer irreparable harm, namely the loss of his TPS status, the ability to live with his family, and the opportunity to work in this country.

### 3. The Balance of Equities Tips Heavily in Favor of Petitioner and an Injunction is in the Public Interest

The threatened injury to Petitioner far outweighs any harm that will result to Respondents if the Court issues a TRO or an injunction. Further, the issuance of an injunction does not disserve the public interest but rather promotes it because it upholds the rule of law.

Petitioner is presently detained and Respondents have advised him that he will be removed on Saturday, March 15, 2024. Respondents transferred from New York to Texas and this has hampered his ability to be represented by his attorney. He holds lawful status in the United States and is protected from removal twice over. His removal in violation of federal law will result in separation from his family, the loss of his lawful status, the opportunity to contest his removal, and his right to apply for asylum.

The resulting harms to the Defendants are nonexistent or at most minimal. They are simply held to the rule of law.

In addition, granting the injunction does not disserve the public interest but rather promotes it. It is in the public interest for government officials to comply with federal law. *MCR Oil Tools, L.L.C v. United States DOT*, 2024 U.S. App. LEXIS 14297 at *19 (5th Cir. June 12, 2024) ("There is a 'substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.'") (quoting *Texas v. United States*, 40 F.4th 205, 229 (5th

Cir. 2022)). And in this case, the law is clear that Respondents have no authority to execute

Petitioner's removal order. Granting the injunction promotes the rule of law.

Petitioner therefore satisfies prongs 3 and 4 of the *Winter* test.

**III.   CONCLUSION**

For the foregoing reasons, this Court should issue a restraining order or preliminary

injunction and instruct Respondents to abstain from executing Petitioner's removal order.

Dated: March 14, 2025                   Respectfully submitted,

/s/ Javier N. Maldonado
Javier N. Maldonado
TX Bar No. 00794216
Fed. Bar No. 20113

Law Office of Javier N. Maldonado, PC
8620 N. New Braunfels, Ste. 605
San Antonio, Texas 78217
Telephone: (210) 277-1603
Facsimile: (210) 587-4001
Email: jmaldonado.law@gmail.com

Paige Austin*
Make The Road New York
301 Grove St.
Brooklyn, New York 11237
Tel: (718) 565-8500 ext. 4139
Facsimile: 866-420-9169
Email: paige.austin@maketheroadny.org
NY Bar: 5246954

* Pro hac vice motion forthcoming

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

On March 14, 2025, Petitioner's attorney, Javier N. Maldonado, conferred with Assistant U.S. Attorney Nancy Massp regarding the filing of this motion. Ms. Masso did not have the benefit of reviewing the petition for writ of habeas corpus and the motion for TRO and preliminary injunction and could not give Respondents' position on the instant motion. The undersigned counsel attempted to resolve this matter without the filing of the instant motion. Undersigned counsel emailed copies of the petition and the instant motion to Ms Masso.

## CERTIFICATE OF SERVICE

On March 14, 2024, undersigned counsel served a copy of this motion on the U.S. Attorney for the Southern District of Texas as required by serving one of his designated agents for service of process. In addition, undersigned counsel emailed this motion to Assistant U.S. Attorney Lacy McAndrew at to the following address:  nancy.masso@usdoj.gov and Daniel.hu@usdoj.gov

Respectfully submitted,

/s/ Javier N. Maldonado
Javier N. Maldonado
TX Bar No. 00794216
Fed. Bar No. 20113

Law Office of Javier N. Maldonado, PC
8620 N. New Braunfels, Ste. 605
San Antonio, Texas 78217
Telephone: (210) 277-1603
Facsimile: (210) 587-4001
Email: jmaldonado.law@gmail.com

ATTORNEY FOR PLAINTIFF

**UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| ADRIAN GIL ROJAS,<br><br>*Petitioner,*<br><br>v.<br><br>FRANK VANEGAS, Facility Administrator for El Valle Detention Center; MIGUEL VERGARA, Acting Field Office Director, San Antonio Field Office, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; PAMELA JO BONDI, United States Attorney General, *in their official capacities,*<br><br>*Respondents.* | Civil Action No.: |

**<u>ORDER</u>**

Pending before the Court is Plaintiff's Motion for a Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction. After having reviewed the motion and the evidence in support of the motion, the parties' arguments and the applicable law, the Court is of the opinion that the motion should be GRANTED.

The Court concludes that Plaintiff has satisfied the factors necessary for issuance of a preliminary injunction. He is likely to succeed on the merits of his claim and he is likely to suffer

irreparable harm. Further, the balance of equities tilts in his favor and an injunction promotes the

public interest by requiring federal officers to comply with regulations that bind them.

It is ORDERED that Defendants shall return, or permit Plaintiff's return, to the United

States within 10 days of this Order.

Signed this ___ day of March, 2025.               _____

UNITED STATES DISTRICT JUDGE